**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DAVID MALGERI,                      :
                                    :       Civil Action No. 08-5460 (RBK)
            Petitioner,             :
                                    :
      v.                            :       **OPINION**
                                    :
JEFF GRONDOLSKY, Warden,             :
                                    :
            Respondent.              :

**APPEARANCES**:

Petitioner pro se
David Malgeri
FCI Fort Dix
P.O. Box 2000
Fort Dix, NJ 08640

**KUGLER**, District Judge

    Petitioner David Malgeri, a prisoner currently confined at the Federal Correctional Institution at Fort Dix, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]  The sole respondent is Warden Jeff Grondolsky.

---

[1] Section 2241 provides in relevant part:

    (a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.
    (c) The writ of habeas corpus shall not extend to a prisoner unless-- ... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ... .

I.  BACKGROUND

Petitioner is presently confined pursuant to a 1997 conviction, pursuant to a plea agreement, for bank robbery, in violation of 18 U.S.C. § 2113(a) and (d).  See United States v. Malgeri, Criminal Action No. 06-10206 (D. Mass.).  In the plea agreement, Petitioner agreed that a three-level sentencing enhancement applied, pursuant to United States Sentencing Guidelines § 2B3.1(b)(2), because Petitioner "brandished a dangerous weapon."

Petitioner previously was convicted of attempted bank robbery, in violation of 18 U.S.C. § 2113(a), and of use and carrying of a firearm, in violation of 18 U.S.C. § 924(c).  See United States v. Malgeri, Criminal Action No. 92-10003 (D. Mass.).

Petitioner asserts that he has been accepted in the Residential Drug Abuse Treatment Program, but that he has been informed that he is ineligible for early release upon successful completion of the Program.[2]  Petitioner alternately asserts that the exclusion is based upon his 1992 firearm conviction or upon the current offense.

In any event, Petitioner asserts that the current regulation is "arbitrary and capricious," and he asks this Court to reverse

---

[2] According to the Bureau of Prisons' Inmate Locator, Petitioner's anticipated release date is September 19, 2010.

the decision that he is ineligible for early release and to award him appropriate relief.

## II. STANDARDS FOR A SUA SPONTE DISMISSAL

United States Code Title 28, Section 2243 provides in relevant part as follows:

> A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto.

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).  Nevertheless, a federal district court can dismiss a habeas corpus petition if it appears from the face of the petition that the petitioner is not entitled to relief. See Lonchar v. Thomas, 517 U.S. 314, 320 (1996); Siers v. Ryan, 773 F.2d 37, 45 (3d Cir. 1985), cert. denied, 490 U.S. 1025 (1989). See also 28 U.S.C. §§ 2243, 2255.

### III. THE RESIDENTIAL DRUG ABUSE TREATMENT PROGRAM

In 1990, Congress required the Bureau of Prisons to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addition or abuse." Crime Control Act of 1990, Pub.L. 101-647, § 2903, 104 Stat. 4789, 4913 (codified as amended at 18 U.S.C. § 3621(b)). In 1994, Congress amended the statute to provide an incentive for prisoner participation. The incentive provision reads:

> The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

Violent Crime Control and Law Enforcement Act of 1994, Pub.L. 103-322, § 32001, 108 Stat. 1796, 1897 (codified at 18 U.S.C. § 3621(e)(2)(B)).

The Bureau published a regulation to implement the early release incentive one year later. Congress did not define, by statute, the term "nonviolent offense." By regulation and Program Statement, the Bureau determined to rely upon the definition of "crime of violence" contained in 18 U.S.C. § 924(c)(3). Thus, the Bureau considered ineligible for early release those offenders convicted of a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or ... that by

4

its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." See 28 C.F.R. § 550.58 (1995); 60 Fed.Reg. 27,692, at 27,695; BOP Program Statement No. 5162.02, § 9 (July 24, 1995).

Following the promulgation of the 1995 regulation, various Courts of Appeals reached differing conclusions on the question of whether the Bureau had discretion to further define a crime of violence as an offense involving a firearm, and thus exclude from eligibility for the early release incentive those prisoners who were incarcerated for such offenses. See generally Lopez v. Davis, 531 U.S. 230, 234-35 (2001).

In light of the split among the Circuits, the Bureau promulgated an interim regulation on October 15, 1997, and made the regulation effective approximately one week prior, on October 9, 1997.  28 C.F.R. § 550.58(a)(1)(vi)(B) (1997); 62 Fed.Reg. 53,690.  The 1997 interim regulation, like the one it superceded, made ineligible for the early release incentive those prisoners incarcerated for an offense that involved the possession, use, or carrying of a firearm.  28 C.F.R. § 550.58(a)(1)(vi)(B) (1997). The 1997 interim regulation differs from the 1995 regulation by relying on "the discretion allotted to the Director of the Bureau of Prisons in granting a sentence reduction to exclude [enumerated categories of] inmates," 62 Fed.Reg. at 53,690,

5

rather than purporting to define the statutory terms "prisoner convicted of a nonviolent offense" or "crime of violence."

In <u>Lopez v. Davis</u>, the Supreme Court held that the 1997 interim regulation's categorical exclusion of prisoners based on their involvement with firearms in connection with the commission of a felony was a permissible exercise of the Bureau's discretion.

> According to the Bureau, Congress simply "did not address how the Bureau should exercise its discretion within the class of inmates who satisfy the statutory prerequisites for early release." Because Congress left the question unaddressed, the Bureau maintains, the agency may exclude inmates either categorically or on a case-by-case basis, subject of course to its obligation to interpret the statute reasonably, see <u>Chevron</u>, 467 U.S., at 844, 104 S.Ct. 2778, in a manner that is not arbitrary or capricious, see 5 U.S.C. § 706(2)(A). In this instance, the Bureau urges, it has acted reasonably: Its denial of early release to all inmates who possessed a firearm in connection with their current offense rationally reflects the view that such inmates displayed a readiness to endanger another's life; accordingly, in the interest of public safety, they should not be released months in advance of completing their sentences.
>
>     We agree with the Bureau's position. ...
>
>     ... [W]e further hold that the regulation excluding Lopez is permissible. The Bureau reasonably concluded that an inmate's prior involvement with firearms, in connection with the commission of a felony, suggests his readiness to resort to life-endangering violence and therefore appropriately determines the early release decision.

<u>Lopez</u>, 532 U.S. at 239-40, 244 (citation and footnotes omitted). The Court declined to consider the arguments of various <u>amici</u> that the 1997 interim regulation violated the notice-and-comment

6

provisions of the APA, as that argument had not been raised or decided below, or presented in the petition for certiorari. 531 U.S. 230, 244 n.6.

The commentary accompanying publication of the 1997 interim regulation recited the history surrounding the Bureau's previous attempts to regulate in this area, including the 1995 interim regulation, which attempted to define the term "crime of violence," and the subsequent split of authority among the federal courts regarding that regulatory definition. The commentary further noted that the Bureau was "publishing this change as an interim rule in order to solicit public comment while continuing to provide consideration for early release to qualified inmates." 62 Fed.Reg. at 53,690. Nevertheless, the effect of the implemented interim regulation was to deny program eligibility to certain categories of inmates confined at that time and until promulgation of a final regulation. The commentary to the interim regulation further provided that comments on the interim rule were due on December 15, 1997, and that the comments would be considered before final action was taken.

Three years later, on December 22, 2000, the Bureau replaced the 1997 interim regulation with a final regulation, which adopted the 1997 interim regulation without change. See 65 Fed.Reg. 80,745. The final regulation was effective as of

December 22, 2000.  Id.  The commentary accompanying the final regulation noted that the Bureau had received and considered approximately 150 comments from individuals and organizations, 138 of which were identical.  Id. at 80,747.  Thus, the final regulation read, in pertinent part, as follows:

> Consideration for early release.
>
> An inmate who was sentenced to a term of imprisonment pursuant to the provisions of 18 U.S.C. Chapter 227, Subchapter D for a nonviolent offense, and who is determined to have a substance abuse problem, and successfully completes a residential drug abuse treatment program during his or her current commitment may be eligible, in accordance with paragraph (a) of this section, for early release by a period not to exceed 12 months.
>
> (a)   Additional early release criteria.
>
> (1) As an exercise of the discretion vested in the Director of the Federal Bureau of Prisons, the following categories of inmates are not eligible for early release:
>
> ...
>
> (iv) Inmates who have a prior felony or misdemeanor conviction for homicide, forcible rape, robbery, or aggravated assault, or child sexual abuse offenses;
>
> ...
>
> (vi) Inmates whose current offense is a felony:
>
> ...
>
> (B) That involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives (including any explosive material or explosive device), ...

5 U.S.C. § 550.58 (2000). The regulation has remained unchanged since 2000.

The Administrative Procedure Act ("APA") requires, with exceptions not relevant here, that proposed rules be published in the Federal Register, not less than 30 days before the proposed rule's effective date, and provide a period for interested persons to comment on the proposed rule, which comments are to be considered by the agency prior to adopting the rule. See 5 U.S.C. § 553(b), (c), (d).

Following promulgation of the 1997 interim regulation, the United States Court of Appeals for the Ninth Circuit determined that the 1997 interim regulation was invalid, for failure to follow the notice-and-comment requirements of the APA. See, Paulsen v. Daniels, 413 F.3d 999 (9th Cir. 2005). The 2000 final rule, however, complied with the notice-and-comment requirements.

More recently, the Court of Appeals for the Ninth Circuit has held that the final 2000 rule is invalid, nevertheless, as "arbitrary and capricious" in violation of § 706(2)(A) of the APA, for failure to set forth a rationale for its categorical exclusion rule. Arrington v. Daniels, 516 F.3d 1106 (9th Cir. 2008).

In Arrington, the Ninth Circuit held that the Bureau's promulgation of § 550.58 was "arbitrary and capricious" because the Bureau failed to state, in the administrative record, an

adequate rationale for its categorical exclusion of felons convicted of crimes that involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives.

> A general desire for uniformity provides no explanation for why the Bureau exercised its discretion to achieve consistency through the promulgation of a categorical <u>exclusion</u> rule.  The Bureau's stated desire for uniformity could have been accomplished in any number of ways.  For example, the Bureau could have achieved uniformity by categorically <u>including</u> prisoners with non-violent convictions involving firearms, thus making them eligible for early release: a result that would have been entirely consistent with the statute's aim of offering incentives for prisoner participation in residential substance abuse programs.  Instead, it chose to achieve uniformity by categorically <u>excluding</u> such prisoners from eligibility.  Although either choice in all likelihood would have withstood judicial scrutiny, the Bureau offered no explanation for why it exercised its discretion to select one rather than the other.  The agency's lack of explanation for its choice renders its decision arbitrary and capricious.

<u>Arrington</u>, 516 F.3d at 1114 (emphasis in original) (citation omitted).  The Ninth Circuit refused to consider the offered rationale that offenders with convictions involving firearms pose an increased risk to the public.  The public safety rationale, the Ninth Circuit concluded, was not stated in the record and was merely a post hoc rationalization.

It is upon the <u>Arrington</u> decision that Petitioner relies here.

### IV.  <u>ANALYSIS</u>

Petitioner does not state whether he has exhausted his administrative remedies.  As an initial matter, if Petitioner has

10

not exhausted his administrative remedies, this Petition may be subject to dismissal on that ground.[3]

Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner ordinarily may not bring a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the execution of his sentence, until he has exhausted all available administrative remedies.  See, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Arias v. United States Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981); Soyka v. Alldredge, 481 F.2d 303, 306 (3d Cir. 1973).  The exhaustion doctrine promotes a number of goals:

> (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the

---

[3] The BOP Administrative Remedy Program is a three-tier process that is available to inmates confined in institutions operated by the BOP for "review of an issue which relates to any aspect of their confinement."  28 C.F.R. § 542.10.  An inmate must initially attempt to informally resolve the issue with institutional staff.  28 C.F.R. § 542.13(a).  If informal resolution fails or is waived, an inmate may submit a BP-9 Request to "the institution staff member designated to receive such Requests (ordinarily a correctional counsel)" within 20 days of the date on which the basis for the Request occurred, or within any extension permitted.  28 C.F.R. § 542.14.  An inmate who is dissatisfied with the Warden's response to his BP-9 Request may submit a BP-10 Appeal to the Regional Director of the BOP within 20 days of the date the Warden signed the response.  28 C.F.R. § 542.15(a).  The inmate may appeal to the BOP's General Counsel on a BP-11 form within 30 days of the day the Regional Director signed the response.  Id.  Appeal to the General Counsel is the final administrative appeal.  Id.  If responses are not received by the inmate within the time allotted for reply, "the inmate may consider the absence of a response to be a denial at that level."  28 C.F.R. § 542.18.

> relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy.

Goldberg v. Beeler, 82 F.Supp.2d 302, 309 (D.N.J. 1999), aff'd, 248 F.3d 1130 (3d Cir. 2000).  See also Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761 (3d Cir. 1996).  Nevertheless, exhaustion of administrative remedies is not required where exhaustion would not promote these goals.  See, e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required where petitioner demonstrates futility); Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where it "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm"); Carling v. Peters, 2000 WL 1022959, *2 (E.D. Pa. 2000) (exhaustion not required where delay would subject petitioner to "irreparable injury").

Petitioner has not alleged any facts that would permit this Court to find that exhaustion of Petitioner's administrative remedies would have been futile or that exhaustion would have subjected Petitioner to "irreparable injury."  Petitioner was advised before he began the program that he was ineligible for early release; thus, it would appear that he has had adequate time to pursue his administrative remedies.

Moreover, the challenged regulation was of relatively recent origin and was the subject of litigation in various federal courts.  Thus, it is not clear that the policy was one that the Bureau of Prisons would not have reconsidered.  Moreover, the issuance of the <u>Arrington</u> decision may provide an impetus for the BOP to reconsider its regulation or its current application of that regulation to Petitioner.

Finally, without a full administrative record, this Court cannot determine whether the BOP has exercised its discretion based upon factors other than the categorical exclusion contained in the challenged regulation.

## V. <u>CONCLUSION</u>

For the reasons set forth above, Petitioner will be ordered to show cause in writing why the Petition should not be dismissed for failure to exhaust administrative remedies.  An appropriate order follows.

                                        s/Robert B. Kugler
                                        Robert B. Kugler
                                        United States District Judge

Dated: February 20, 2009